UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DOUG HARPUR, PATRICK PICHETTE,
KENAUK CANADA ULC, THE BAY MEADOW
LIMITED PARTNERSHIP, FAIRLIGHT CABIN
QUEBEC L.P., KENAUK PROPERTIES L.P.,
ORGANIX CORPORATION, and NORTH OAKS
INVESTMENTS LLC,                                                            **OPINION & ORDER**

                                        Plaintiffs,                 No. 24-CV-5006 (CS)

        - against -

CHARLES BICH,

                                        Defendant.
---------------------------------------------------------------x

Appearances:

Anne C. Lefever
John A. Pintarelli
Pillsbury Winthrop Shaw Pittman LLP
New York, New York
*Counsel for Plaintiffs*

Dennis H. Tracey, III
Benjamin A. Fleming
Alexandra M. Lyon
Hogan Lovells US LLP
New York, New York
*Counsel for Defendant*

Seibel, J.

        Before the Court is Plaintiffs' motion to remand.  (ECF No. 12.)  For the following

reasons, the motion is GRANTED.

I.    **BACKGROUND**

A.    **Facts**

The following facts are drawn from the notice of removal, (ECF No. 1), which contains

Plaintiffs' Motion for Summary Judgment in Lieu of Complaint,[1] and from the parties'

submissions on the instant motion.  *See Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010);

*Pondexter v. Oruzio*, No. 15-CV-5617, 2017 WL 1079974, at *1 (E.D.N.Y. Mar. 21, 2017);

*Enters. v. Allen*, No. 15-CV-6675, 2016 WL 3512176, at *1 (E.D.N.Y. June 22, 2016).

On December 11, 2015, Defendant Charles Bich commenced a lawsuit (the "Quebec

Proceedings") against Plaintiffs in the Superior Court of Quebec, District of Montreal (the

"Quebec Court"), asserting claims for breach of contract relating to the purchase of a parcel of

land near Montreal.[2]  (Ps' Mem. ISO MSJ at 2-3.)  On May 31, 2022, following a bench trial, the

Quebec Court issued a judgment dismissing Bich's claims in their entirety and granting

Plaintiffs' request for a finding that the proceedings were abusive.  (ECF No. 14-1 ("First

Quebec Judgment"); ECF No. 1-3 at 6.)  The Quebec Court premised its abuse finding on Bich's

failure "to present the evidence necessary to support [his] action to the Court."  (First Quebec

Judgment at 63.)  It found "sophistry . . . in the pleadings," that Bich's allegations were "gross

exaggerations of the proof" at trial and that Bich's position was so "clearly unfounded" that

---

[1] Plaintiffs commenced this action in the Supreme Court of the State of New York, New York County, by filing a Motion for Summary Judgment in Lieu of Complaint pursuant to New York Civil Practice Law and Rules §§ 3213 and 5303(b).  The Court refers to Plaintiffs' memorandum of law in support of their motion for summary judgment in lieu of complaint, (ECF No. 1-1 at 6-21), as "Ps' Mem. ISO MSJ."  Citations to exhibits attached to the Notice of Removal ("ECF No. 1-__") refer to the page numbers assigned by the Court's Electronic Case Filing ("ECF") System.  The remaining citations refer to the documents' internal pagination.

[2] Bich was joined by co-plaintiff Picchio International Inc.  (Ps' Mem. ISO MSJ at 3 n.2.) Plaintiffs later impleaded two additional parties.  (*Id.*)

"[o]nly temerity could have led [Bich] to push his action forward in the way that he did."  (*Id.* at 64.)

On December 5, 2022, Plaintiffs applied for professional fees and disbursements that "were unduly incurred to conduct [the] trial" and for punitive damages based on Bich's "unnecessarily harsh, vindictive and malicious" conduct.  (ECF No. 1-3 at 12.)  On August 31, 2023, following briefing and a hearing, the Quebec Court issued a judgment awarding Plaintiffs CAD $1,297,285.92 in professional fees and disbursements and CAD $175,000 in punitive damages.  (ECF No. 14-2 ("Second Quebec Judgment") at 25.)  As to the legal fees, the Quebec Court found that Plaintiffs "were forced to incur legal fees needlessly" because of Bich's "unfounded and frivolous allegations, many of which were doubled down upon during the course of the trial," and his "failure to advise [Plaintiffs] and the Court of the decision not to call many announced witnesses in a timely way."  (*Id.* at 11-12.)  As to the punitive damages, the Quebec Court found that Bich "attacked the dignity, honour and reputation of [Plaintiffs] Harpur and Pichette" by using "exaggerated unfounded language in a public document . . . that was then picked up by the press to the detriment of [Plaintiffs]."  (*Id.* at 19, 24.)

**B.    Procedural History**

On May 30, 2024, Plaintiffs commenced the instant action in New York County Supreme Court seeking recognition and enforcement of the Second Quebec Judgment granting CAD $175,000 in punitive damages.  (ECF No. 1-1 at 4-5.)  Plaintiffs did not seek to enforce the award of legal fees, which Bich has satisfied.  (ECF No. 22-3.)  On July 1, 2024, Bich removed the action to this Court based on the Securing the Protection of our Enduring and Established Constitutional Heritage Act (the "SPEECH Act" or the "Act").  (ECF No. 1 at 3-5.)  The instant motion followed.

II.    **LEGAL STANDARD**

"[F]ederal courts are courts of limited jurisdiction," and "may not exercise jurisdiction absent a statutory basis." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 438 (2019); *see Robinson v. Kotler*, No. 23-CV-10623, 2024 WL 839049, at *1 (S.D.N.Y. Feb. 28, 2024) ("[F]ederal courts are courts of limited jurisdiction, meaning that they can only hear certain types of cases permitted by law.").[3]  As a general matter, removal jurisdiction must be "strictly construed," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and any doubts should be resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of states," *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).  The party seeking removal bears the burden of demonstrating that removal is proper.  *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) ("The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction."); *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011) ("A party seeking removal bears the burden of showing that federal jurisdiction is proper.").

Here, Bich claims that removal is proper under the SPEECH Act, (*see* ECF No. 1 at 3-5), which provides that "any action brought in a State domestic court to enforce a foreign judgment for defamation . . . may be removed by any defendant . . . without regard to the amount in controversy between the parties" where there is minimal diversity.  28 U.S.C. § 4103.  The Act defines "defamation" as "any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person." 28 U.S.C. § 4101(1).

III.  **DISCUSSION**

Plaintiffs argue that remand is appropriate because the foreign judgment they seek to enforce – the Second Quebec Judgment awarding punitive damages – is one for abuse of process, not for "defamation" under the SPEECH Act.  (*See generally* ECF No. 13 ("Ps' Mem. ISO MTR").)  Bich maintains that removal is proper because the Second Quebec Judgment is based on a "similar claim" under the SPEECH Act's definition of "defamation."  (*See generally* D's Opp. to MTR.)  Because Bich has not offered another basis for removal jurisdiction, and there does not appear to be one, the only question before the Court is whether the Second Quebec Judgment falls within the SPEECH Act's definition of "defamation" such that this Court may exercise subject matter jurisdiction over the case.

A.  **Plain Meaning**

"[S]tatutory interpretation must begin with the plain language, giving all undefined terms their ordinary meaning while attempting to ascertain how a reasonable reader would understand the statutory text, considered as a whole."  *Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015); *see Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418 (2d Cir. 2022) (court's "analysis begins, as it must, with the plain text of [the statute].").  "[I]f [the] statutory language is plain, [the court] must enforce it according to its terms."  *Am. C.L. Union v. Clapper*, 804 F.3d 617, 623 (2d Cir. 2015).  "To identify a statute's plain meaning, [courts] afford words their ordinary, common-sense meaning and draw on the specific context in which that language is used."  *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 517 (2d Cir. 2023). They also read the statute as a whole, rather than "constru[ing] statutory phrases in isolation."

*Springfield Hosp. Inc.*, 28 F.4th at 418; *see Am. C.L. Union*, 804 F.3d at 623 ("[W]hen deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme."); *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 368 (2d Cir. 2006) (court's "first task is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case").

In short, "[w]hether a statute is plain or ambiguous is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Frank G.*, 459 F.3d at 368. "[L]anguage is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person. . . ." *Id.* "[W]hen the language of a statute is unambiguous, judicial inquiry is complete." *Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 46 (2d Cir. 2020). But if the "meaning is not clear, [courts] make use of a variety of interpretive tools, including canons, statutory structure, and legislative history." *Id.* "[Courts] must construct an interpretation that comports with the statute's primary purpose and does not lead to anomalous or unreasonable results." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Zaro Bake Shop, Inc.*, No. 20-CV-9894, 2021 WL 2350094, at *16 (S.D.N.Y. June 8, 2021).

As noted, the SPEECH Act defines "defamation" as "any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person." 28 U.S.C. § 4101(1). The Quebec Court's punitive damages award is not a judgment for defamation, libel, or slander. The question, therefore, is whether the judgment is for a "similar claim." Bich contends that it is, because the Quebec Court based its award of punitive damages on his false statements that

caused Plaintiffs reputational harm.  (*See* D's Opp. to MTR at 9.)  Plaintiffs maintain that it is

not, because the punitive damages award was predicated on the Quebec Court's finding of abuse

of process, which was based on Bich's "unfounded and frivolous" allegations, as well as other

offensive litigation tactics.  (*See* Ps' Mem. ISO MTR at 4-5.)

It is not clear from the definition alone whether the Second Quebec Judgment awarding

punitive damages is a "similar claim" to defamation, libel, or slander.  It is true, as Bich

contends, that the explanatory language following "similar claim" – "alleging that forms of

speech are false, have caused damage to reputation or emotional distress, have presented any

person in a false light, or have resulted in criticism, dishonor, or condemnation of any person,"

28 U.S.C. § 4101(1) – is broad.  (*See* D's Opp. to MTR at 11.)  But it is not clear that "similar

claim" itself is broad enough to encompass claims, like the one here, that are based not on

provisions specific to speech but on other kinds of requirements.  "Similar claim" can reasonably

be interpreted both narrowly – to require that the foreign claim be brought under a speech law –

and broadly – to include any claim that, in the claimant's individual circumstances, invokes

harmful speech.  That the parties present two different reasonable interpretations of the term also

suggests that the language is not entirely clear.  *See Frank G.*, 459 F.3d at 368; *Suggs v. United*

*States*, No. 20-CV-634, 2023 WL 2712594, at *9 (D. Conn. Mar. 30, 2023).  Thus, I find that the

plain language is ambiguous:  it is not apparent that "similar claim" covers the Second Quebec

Judgment awarding punitive damages.

**B.**    **Canons**

"Where, as here, the terms of a statute are ambiguous, we turn to the traditional canons of

statutory construction to resolve the ambiguity."  *Frank G.*, 459 F.3d at 370.  "In determining

which statutory canons to apply in resolving an ambiguity, a court should select only those most

relevant and useful in light of the particular situation and ambiguity confronted." *In re Lucarelli*, 517 B.R. 42, 51 (Bankr. D. Conn. 2014). The canons of *ejusdem generis* and *noscitur a sociis* are instructive here. "The canon of *ejusdem generis* dictates that we should interpret a general term that follows specific ones to refer only to items of the same class as the specific ones." *Eisenhauer*, 84 F.4th at 521. "And the canon of *noscitur a sociis* instructs that a word is known by the company it keeps." *Id.*

Here, the SPEECH Act defines "defamation" as "any action or other proceeding for defamation, libel, slander, or *similar* claim." 28 U.S.C. § 4101(1) (emphasis added). Because "similar claim" follows three specific terms, it must be "controlled and defined by reference to" those terms. *Sookul v. Fresh Clean Threads, Inc.*, No. 23-CV-10164, 2024 WL 4499206, at *11 (S.D.N.Y. Oct. 16, 2024). Claims for defamation, libel, and slander, by definition, target harmful speech or expression. *See Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) ("A claim for 'defamation' is an umbrella term that incorporates the twin torts of libel and slander. Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander."), *aff'd sub nom. Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69 (2d Cir. 2018). Under *ejusdem generis* and *noscitur a sociis*, I thus interpret "similar claim" as limited to causes of action specifically targeting harmful speech.

The Second Quebec Judgment for punitive damages is not a judgment for such a claim. As an initial matter, the award of punitive damages was predicated on the Quebec Court's finding of abuse of process in the First Quebec Judgment. (*See* ECF No. 1-3 at 12; ECF No. 14-2 at 3.) In holding that Bich's conduct during the Quebec Proceedings was abusive, the Quebec Court found that he advanced allegations that were "gross exaggerations of the proof that was

made" and failed to "present the evidence necessary to support [his] action to the Court." (First Quebec Judgment at 63-64.) The Quebec Court did not at that time consider the statements Plaintiffs later alleged to be false and harmful to their reputations. Based on the Quebec Court's conclusions in the First Quebec Judgment, it is evident that a finding that a claim was an abuse of process under Canadian law does not specifically target, or even require, the types of harmful speech covered by defamation, libel, and slander claims.

Bich argues that focusing on the abuse finding conflates the First Quebec Judgment with the Second Quebec Judgment, which is what Plaintiffs seek to enforce in the instant action. (D's Opp. to MTR at 15-16). I disagree. The record suggests that the punitive damages awarded in the Second Quebec Judgment were merely the remedy for the finding of abuse of process in the First Quebec Judgment. (*See* ECF No. 1-3 at 12; ECF No. 14-2 at 3.) Therefore, the "claim" at issue is the allegation of abuse of process, not the application for punitive damages. And even if the latter is the operative "claim," I reach the same conclusion. It is true, as Bich notes, that the Quebec Court based its award of punitive damages in large part on Bich's "exaggerated unfounded language in a public document . . . that was then picked up by the press to the detriment of [Plaintiffs]." (Second Quebec Judgment at 24; *see* D's Opp. to MTR at 13-14.) But there is no indication that untrue or reputationally harmful speech like that targeted by claims for defamation, libel, and slander is necessary to an award of punitive damages based on abuse of process. In fact, the Quebec Court discussed other, even if less significant, conduct by Bich in its decision, including Bich's advance registration of his judicial claim with the land registry. (Second Quebec Judgment at 21-23, 24.) That the Quebec Court considered the harm caused by Bich's conduct to determine the appropriate amount of punitive damages does not undermine the

fact that its ruling condemns litigation conduct.  Therefore, the Second Quebec Judgment for

punitive damages is not a judgment for "defamation, defamation, libel, slander, or similar claim."

      **C.**    **Structure and Purpose**

      This interpretation comports with the SPEECH Act's structure and legislative purpose.

*See Cuthill v. Blinken*, 990 F.3d 272, 281 (2d Cir. 2021) ("Where the plain text does not

conclusively resolve the question, we can draw upon a variety of interpretive tools,

including statutory structure, to discern the text's meaning and purpose."); *Auburn Hous. Auth. v.

Martinez*, 277 F.3d 138, 143-44 (2d Cir. 2002) ("If the meaning of the statute is ambiguous, the

court may . . . look at legislative history to determine the intent of Congress.").

      It is well settled that "Congress enacted the SPEECH Act in 2010 in response to the

perceived threat of 'libel tourism,' a form of international forum-shopping in which a plaintiff

chooses to file a defamation claim in a foreign jurisdiction with more favorable substantive law."

*Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2013); *see* H.R. Rep. No. 111-

154, at 1 (2009) (SPEECH Act "is intended to dissuade potential *defamation plaintiffs* from

circumventing First Amendment protections by filing suit in foreign jurisdictions that lack

similar protections.") (emphasis added); S. Rep. No. 111-224, at 8 (2009) ("The SPEECH Act

will ensure that no domestic court can be used to diminish the First Amendment rights of

American authors, reporters and publishers by enforcing a foreign libel judgment that is

inconsistent with U.S. law. . . . This bill will prevent the chilling of American free speech that is

the inevitable result of these foreign libel lawsuits.").  "In enacting the statute, Congress found

that 'by seeking out foreign jurisdictions that do not provide the full extent of free-speech

protections to authors and publishers that are available in the United States' and by suing United

States authors or publishers in those foreign jurisdictions, some persons were 'obstructing' the

free expression rights of domestic authors and publishers and 'chilling' domestic citizens' First

Amendment interest in 'receiving information on matters of importance.'" *Trout Point Lodge,*

*Ltd.*, 729 F.3d at 487 (quoting Pub. L. 111-223, § 2 (2010), reproduced in the Notes section of 28

U.S.C. § 4101). To that end, the SPEECH Act precludes recognition and enforcement of

"foreign judgment[s] for defamation" unless (1) "the defamation law applied in the foreign

court's adjudication provided at least as much protection for freedom of speech and press in that

case as would be provided by the [F]irst [A]mendment to the Constitution" or (2) "the party

opposing recognition or enforcement of that foreign judgment would have been found liable for

defamation by a domestic court applying the [F]irst [A]mendment to the Constitution." 28

U.S.C. § 4102(a)(1).

       It is apparent that the instant action is not one that Congress intended to cover under the

SPEECH Act. The term "foreign judgment for defamation" appears in both the SPEECH Act's

removal provision, 28 U.S.C. § 4103, and its substantive provision, 28 U.S.C. § 4102. Because

the Act provides only one definition of "defamation," 28 U.S.C. § 4101(1), a finding by this

Court that the punitive damages award is a "foreign judgment for defamation" under the removal

provision would necessarily require application of the substantive provision to the award at a

later stage of the litigation. And it is evident that Congress did not so intend. Bich is not an

author, reporter or publisher, and Plaintiffs did not sue him in a foreign jurisdiction to evade the

rigorous speech protections of the First Amendment. Rather, Bich sued Plaintiffs in a foreign

jurisdiction, not for a speech-related injury, but for breach of contract. (*See* Ps' Mem. ISO MSJ

at 2-3.) It was only after Bich was found to have abused the judicial process that Plaintiffs

sought punitive damages based on his harmful statements. (*See* ECF No. 1-3 at 12.) This is a far

cry from the libel tourism that Congress sought to combat with the Act.

Not only would application of the substantive provision to the punitive damages award –
and other claims that incidentally implicate speech – stretch the statute's applicability far beyond
Congress's intended purpose, but it would also lead to "anomalous or unreasonable results."
*Bakery & Confectionery Union*, 2021 WL 2350094, at *16.  Applying the SPEECH Act to the
punitive damages award would require this Court to evaluate a Canadian court's remedy for
abuse of process – and potentially negate its authority to sanction a litigant who abuses the
judicial process.  I decline to interpret the Act to infringe upon international comity to such an
extent absent an express directive from Congress.  *See In Re: Vitamin C Antitrust Litig.*, 8 F.4th
136, 143-44 (2d Cir. 2021) ("[International comity] is the recognition which one nation allows
within its territory to the legislative, executive or judicial acts of another nation, having due
regard both to international duty and convenience, and to the rights of its own citizens or other
persons who are under the protection of its laws."); *In re Picard, Tr. for Liquidation of Bernard
L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 100 (2d Cir. 2019) ("[A]s a canon of construction,
[international] comity might shorten the reach of a statute.").

Indeed, the substantive provision provides that "[n]othing in this section shall be
construed to . . . affect the enforceability of any foreign judgment other than a foreign judgment
for defamation."  28 U.S.C. § 4102(e).  This is consistent with the notion that "the SPEECH Act
does not pertain to all foreign judgments allegedly inconsistent with any part of the First
Amendment but focuses uniquely on defamation actions and the First Amendment rights of
American authors and publishers."  *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1004 n.22 (9th
Cir. 2013).  Bich plainly is not the sort of speaker the Act is intended to protect.

To interpret "defamation" as limited to claims that necessarily target speech is also
consistent with the limited body of caselaw applying the SPEECH Act.  Those cases "concern[]

challenges to enforcement of foreign-country judgments issued on the basis of foreign laws specific to speech or expression – such as libel, defamation and hate speech laws – not laws of general application." *Naoko Ohno*, 723 F.3d 984, 1004 (9th Cir. 2013); *see, e.g.*, *Trout Point Lodge, Ltd.*, 729 F.3d at 484-86; *Perret v. Handshoe*, 708 F. App'x 187, 188-89 (5th Cir. 2018) (*per curiam*). Bich points to *Elec. Frontier Found. v. Glob. Equity Mgmt. (SA)*, 290 F. Supp. 3d 923 (N.D. Cal. 2017), to support his argument that the SPEECH Act's definition of "defamation" is broad enough to include the punitive damages award. But that case dealt with a foreign injunction requiring the removal of an online article based on a claim that the article contained "misleading and negligent" statements. *Id.* at 931. That claim, unlike the one at issue here, appears to be based on a foreign law specific to speech, even if under a different label than defamation, libel, or slander. That is precisely the type of claim that Congress intended to cover under the "similar acts" portion of the "defamation" definition – and very different from the generally applicable claim that Plaintiffs pursued in the Quebec Proceedings.

Accordingly, the Second Quebec Judgment for punitive damages is not a "foreign judgment for defamation" that permits Plaintiffs' action to enforce that judgment to be removed to this Court under the SPEECH Act.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to remand is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 12, 24),[4] and remand this case to the Supreme Court of the State of New York, New York County.

---

[4] ECF No. 24 is a request for argument, which the Court does not find necessary.

**SO ORDERED.**

Dated: December 2, 2024
     White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.